UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIMBERLY HOFFMAN and<br>PATTI PATE-SCHNURE, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:12-CV-3806-B |
| | § | |
| AMERICAHOMEKEY, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Katherine Shadle's Motion for Judgment on the Pleadings

(doc. 126), filed on November 12, 2013. For the reasons discussed below, the Court **GRANTS** the

Motion.

## I.

## BACKGROUND

This case arises out of an employer's allegedly fraudulent representations concerning its

financial status as well as its alleged failure to transfer the full amount of retained bonus payments

as required under two employment contracts. In 2009, Plaintiffs Kimberly Hoffman and Patti Pate-

Schnure both entered into employment contracts with Defendant AmericaHomeKey, Inc. ("AHK")

in 2009 to serve as Senior Vice Presidents. Doc. 108, Am. Compl. ¶¶ 17-18. In these positions, both

assumed responsibilities to manage the company's Southeast Branch offices. *Id.* Pursuant to these

contracts, Plaintiffs were entitled to receive a monthly bonuses equal to 50 % of the net, pre-tax

profits of the southeastern branches. *Id.* ¶ 19. Plaintiffs could request to receive less than their

monthly bonuses in order to maintain reserves for future or anticipated losses, or in order to maintain an operational reserve. *Id.* ¶ 20. The contracts also provided that when either party terminated the contracts, any reserve funds, including bonuses, would be transferred to Plaintiffs within 30 days. *Id.* ¶ 21.

Plaintiffs requested to be paid less than their monthly bonuses for certain months in 2009, and AHK withheld those funds for deposit in the future/anticipated losses or operational reserve. *Id.* ¶¶ 22-23. AHK also allegedly withheld Plaintiffs' bonuses for three months in 2011 without authorization. *Id.* ¶ 24. When AHK terminated Plaintiffs' employment contracts on November 15, 2011, it failed to pay Plaintiffs the bonus payments that it had withheld in 2009 and 2011 within 30 days. *Id.* ¶¶ 25-26.

Plaintiffs insist that Lane Terrell, Ida Alcazar, Katherine Shadle, Frank Caughron, and Lynn Eaton (collectively "the Individual Defendants") were all senior management of AHK who participated in the decision to hire Plaintiffs. *Id.* ¶¶ 28, 30, 32-33, 35. They maintain that Terrell represented to Plaintiffs that they could elect to be paid less in their bonuses in order to retain reserves and that they would be paid any reserve within 30 days of the termination of the employment contracts. *Id.* ¶¶ 28, 83-85. They insist that the other Individual Defendants all authorized Terrell to make these statements, and that they all reviewed and approved the terms of the employment contracts that contained these representations. *Id.* ¶ 85.[1] Plaintiffs also aver that Terrell, Alcazar, and Caughron each later assured them prior to their termination that they would

---

[1] It is not clear from Plaintiffs' allegations in ¶¶ 82-84 of their Complaint whether they intend to allege that all of the Individual Defendants made representations concerning Plaintiffs' retained bonuses, or that Terrell made these representations with the other Individual Defendants' authorization. Whatever Plaintiffs' intent, however, it does not alter the Court's analysis below.

be paid the bonuses they were owed. *Id.* ¶¶ 29, 31, 34, 87, 101. Plaintiffs maintain that, when these three Individual Defendants made these assurances, however, they knew that AHK would not repay Plaintiffs' bonuses. *Id.* Furthermore, Plaintiffs allege that although they regularly requested financial and company information pertaining to AHK throughout their employment, all of the Individual Defendants failed to provide Plaintiffs with accurate and timely financial information. *Id.* ¶¶ 36-37. Plaintiffs maintain that Defendants "repeatedly and willfully misled [them] regarding the worsening financial situation of Defendant [AHK] in order to induce Plaintiffs to continue working for" AHK and to allow AHK to avoid paying the withheld bonus amounts. *Id.* ¶¶ 89, 103. They allege that the Defendants specifically failed to inform them of an audit by the Texas Office of Inspector General and that, had Plaintiffs known of the audit, they would have terminated their employment contracts and demanded payment of the withheld bonus payments. *Id.* ¶¶ 37-40, 90, 104.

Plaintiffs filed a Complaint in the State Court of Cobb County in Georgia, alleging causes of action for breach of contract, unjust enrichment, conversion, fraud, and negligent misrepresentation. Doc. 1, Notice of Removal 1. Subsequently, Defendant Alcazar, with the consent of all Defendants, removed the case to the United States District Court for the Northern District of Georgia. *Id.* Following Defendant AHK's Motion to Transfer Venue, the case was transferred to this Court in the Northern District of Texas. Doc. 41, Order. All of the defendants have been sporadically represented by counsel throughout the course of this litigation, and Shadle filed the instant Motion for Judgment on the Pleadings during a period in which she was represented by counsel, on November 12, 2014. Doc. 126, Def.'s Mot.

## II.

## LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367, at 509-10 (2d ed. 1990)). The standard for evaluating a Rule 12(c) motion is the same as the standard for evaluating a Rule 12(b)(6) motion for failure to state a claim. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citation omitted).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the Court to dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010) (citations omitted). In considering a Rule 12(b)(6) motion to dismiss "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

In order to survive a motion to dismiss, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

- 4 -

defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

## III.

## ANALYSIS

Shadle moves for dismissal of all of Plaintiff's claims against her, including breach of contract, fraud, and negligent misrepresentation. Plaintiffs argue that they have properly pled each of these claims against Shadle. The parties' respective arguments as to each claim will be addressed separately below.

*A. Breach of Contract*

Shadle first moves for dismissal of Plaintiffs' breach of contract claim, arguing that, because she acted solely as a representative for AHK and was not a party to the employment contracts, she cannot be held individually liable for AHK's breach of Plaintiffs' employment contracts. In Texas, a party generally must be a party to a contract before she can be held liable for a breach of that contract. *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 387 (Tex. App.–Dallas 2012, no pet.) ("Under the general law of contracts, a party must show either privity or third-party-beneficiary status in order to have standing to sue for breach of contract."). As one federal court has noted,

> In Texas, it is an elementary rule of law that privity of contract is an essential element of recovery in an action based on a contractual theory. . . . Indeed, except for third-party beneficiary and tortious interference theories . . . in order to maintain an action to recover for breach of contract, privity must exist between the party damaged and the party sought to be held liable.

*Norris v. Housing Auth. of Galveston*, 980 F. Supp. 885, 892 (S.D. Tex. 1997). Here, the Plaintiffs

allege that the contracts at issue were solely between AHK and Plaintiffs. Doc. 108, Am. Compl. ¶¶ 17-18. Nowhere in their Complaint do Plaintiffs allege that Shadle was a party to the contract; instead, they only assert that she "approved" the contract terms. *Id.* ¶ 32. Such allegations are insufficient to establish privity of contract between the parties, and are therefore insufficient to support a breach of contract claim. *See Norris*, 980 F. Supp. at 892-93 (holding that a plaintiff's breach of contract claim failed because he could make no showing that the individual defendants acted in their individual capacities when they signed the contract on behalf of the employer housing authority).

Regardless of the lack of privity between Shadle and the plaintiffs, the parties focus much of their argument on what a party must show in order to hold a corporate officer liable for a corporation's breach of contract. Shadle insists that, under Texas law, an officer or director cannot be held liable for breach of contract when she acts in a representative capacity and in good faith on behalf of the corporation. Doc. 126, Def.'s Br. 10. She reasons accordingly that because the Amended Complaint does not allege that she acted for personal gain or interest, she cannot be held personally liable for AHK's breach. *Id.* at 10-11.

Plaintiffs respond by arguing that Texas law does, in fact, allow for a corporate agent who participates in a corporation's breach to be held personally liable for breach of contract. Doc. 128, Pls.' Resp. 3. They insist that their allegations that Shadle was a high-level executive, that she approved the employment contracts' terms regarding bonuses, and that she approved AHK's breach of these contracts are sufficient to hold Shadle personally liable for the corporation's breach of contract. *Id.* at 4.

The parties' arguments are more appropriately geared towards a claim for tortious

interference, a claim which Plaintiffs fail to affirmatively assert against the Individual Defendants. Even if the Plaintiffs did assert a claim for tortious interference, however, their claim would fail because they do not allege that Shadle "acted in a manner so contrary to the corporation's best interests that his or her actions could only have been motivated by personal interest." *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 432 (Tex. 1997). Indeed, Plaintiffs' arguments run directly contrary to the Texas Supreme Court's holding in *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995), wherein the Court held that a corporate representative cannot be held personally liable for interference with a contract when she in good faith induces a corporation to violate a contractual obligation. In reaching its holding, the court noted that because a corporation can only act through its representatives, allowing a corporate representative to be held liable for tortious interference for advising the corporation to breach a contract would effectively deprive a corporation of the ability to abandon disadvantageous but valid contracts. *Id.* at 795. The court therefore stressed that a plaintiff must show that a corporate agent acted for her own personal interests in order to establish a claim for tortious interference. *Id.* at 796. Here, Plaintiffs merely allege that Shadle approved the breach of contract and provide no other factual support to find that Shadle either approved the contract or breached the contract to her own benefit. Doc. 108, Am. Compl. ¶ 16.

Finally, the cases that Plaintiffs rely on to show that a corporate officer can be held liable for a corporation's breach of contract are inapposite here. Specifically, and contrary to Plaintiffs' arguments, these cases stand only for the principle that corporate officers are not allowed to use the corporate veil as a shield to justify their own wrongdoing. *Corpus Christi Development Corp. v. Carlton*, 644 S.W.2d 521, 523 (Tex. App.–Corpus Christi 1982, pet. denied). In *Corpus Christi Development Corp.*, for instance, the president of the corporation signed a real estate contract on

behalf of the corporation. *Id.* at 522. He later informed the buyer that the corporation would not sell. *Id.* The court was careful to note that generally agents are not liable on a contract made for a principal, but that the case before it presented an exceptional situation in which the president intended to use the corporation as a shield to justify his own wrongs. *Id.* at 523. Here, by contrast, there are no allegations that Shadle attempted to use AHK as a corporate shield for her own bad acts or to somehow insulate her from a contractual relationship with the Plaintiffs that she would have otherwise entered into personally. Accordingly, Plaintiffs' arguments that Shadle, as a corporate agent, can be held individually liable for AHK's breach of the employment contracts fails.[2]

Thus, for the reasons state above, Plaintiffs' breach of contract claim against Shadle is hereby **DISMISSED with prejudice**.

*B. Fraud*

Shadle also moves to dismiss Plaintiffs' fraud claims against her. Although it is not clear from Plaintiffs' Complaint what fraud theory Plaintiffs sue under, Shadle maintains that Plaintiffs have failed to allege sufficient facts to satisfy the Rule 9(b) heightened pleading standard under those fraud theories most relevant to Plaintiffs' allegations, including fraudulent inducement, fraud by omission, or common law fraud.

To establish fraud in Texas, a plaintiff must show that

(1) a material representation was made; (2) it was false when made; (3) the defendant either knew it was false or made it recklessly without any knowledge of its

---

[2] Plaintiffs also assert that Defendants breached the cost-sharing provision of the arbitration clause in their employment contracts. Doc. 108, Am. Compl. ¶ 67. Neither party addresses this claim at all in their briefs, and it is unclear from the Complaint whether Plaintiffs intend to assert this claim against Shadle. *See id.* ¶¶ 51-55. Even if Plaintiffs did intend to assert that Shadle breached the contract by not abiding by the arbitration clause in Plaintiffs' employment contracts, this claim would fail for the same reasons that Plaintiffs' other breach of contract claims fail.

truth; (4) the defendant made the false material representation with the intent that it should be relied upon by the plaintiff; (5) the plaintiff relied on the representation; and (6) the plaintiff suffered injury.

*Smith v. BCE Inc.*, 225 F. App'x 212, 217 (5th Cir. 2007). Rule 9(b) provides, in pertinent part, that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003); *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). In other words, the Complaint must provide "the essentials of the first paragraph of any newspaper story, namely the who, what, when, where, and how." *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994). As noted above, Plaintiffs' Complaint is not completely clear as to what theory of fraud they intend to assert against Shadle; regardless, Rule 9's heightened pleading standard applies to all averments of fraud. *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001).

1.   Common law fraud

Plaintiffs allege that Defendants collectively made a number of misrepresentations that are sufficient to support a claim of fraud. They specifically allege that Defendants, including Shadle, authorized Terrell to represent to Plaintiffs that they could elect to be paid less in their monthly

bonuses in order to retain reserves for future/anticipated losses and operational reserve, doc. 108, Am. Compl. ¶¶ 82-84; that Defendants promised that Plaintiffs would be paid any of these reserve amounts upon termination of their employment contracts, *id.* ¶ 85; that Defendants "willfully misled Plaintiffs regarding the availability" of their bonuses, *id.* ¶ 87; and that Defendants "repeatedly and willfully misled Plaintiffs regarding the worsening financial situation" of Defendant AHK, *id.* ¶ 89. Plaintiffs maintain that these allegations were adequately specific to apprise Shadle of the nature of the claim against her as well as the statements upon which the claim is based. Doc. 128, Pls.' Resp. 5-6.

Shadle, in turn, argues that Plaintiffs' allegations are insufficient to establish a fraud claim because they fail to identify the time, place, or contents of any alleged false representations made by Shadle individually. Doc. 126, Def.'s Br. 13.

Plaintiffs' allegations that Defendants "willfully misled" Plaintiffs regarding their bonuses or AHK's financial situation lack the necessary specificity to satisfy the Rule 9(b) heightened pleadings standard. Such allegations fail to identify the contents, timing, or circumstances surrounding any statement made by Shadle, and therefore do not set out those facts that the Fifth Circuit has indicated are necessary to reach the level of particularity that is required under Rule 9(b). *Plotkin*, 407 F.3d at 696; *Kelly Law Firm, P.C. v. An Attorney for You*, 679 F. Supp. 2d 755, 773 (S.D. Tex. 2009) ("Plaintiffs' fraud allegations fail to specify any specific speaker making a fraudulent statement or omission. . . . [T]he allegations do not specify which of the representations in the proposal it relied on, nor does it specify the time, place, and manner in which the representations in this proposal were presented to the plaintiffs."). Plaintiffs' allegations that they were willfully misled therefore fail to make out a claim for common law fraud.

Plaintiffs' allegations that Shadle "authorized" Terrell to make specific representations regarding their bonuses and that Shadle "approved" parallel terms in their employment contracts are similarly insufficient to make out a claim for fraud. While more specific than Plaintiffs' allegations that Defendants "misled" them, these allegations are still not sufficiently specific under Rule 9(b) because they do not provide any explanation as to why these statements were fraudulent. *Plotkin*, 407 F.3d at 696 (holding that a plaintiff must plead with "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent."). Indeed, Plaintiffs plead no facts to show that Terrell's representations were false when made or that Shadle either knew they were false or authorized Terrell to make the representations recklessly and without any knowledge of their truth, and thus they also fail to make out two essential elements of their Texas common law fraud claim with any degree of specificity. *Smith*, 225 F. App'x at 217; *see also American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 667 (5th Cir. 2004) ("a plaintiff must set forth specific facts that support an inference of fraud"). The only allegation that Plaintiffs do make regarding the falsity of Terrell's representations is to claim that Defendants "willfully misled Plaintiffs regarding the availability of [their bonuses] for the purpose of inducing Plaintiffs to enter into the Employment Contracts." Doc. 108, Am. Compl. ¶ 86. This conclusory statement is insufficient to show that Terrell's representations were false when made or that Shadle knew they were false. Moreover, the fact that Defendants later breached the contract does not establish that Terrell's representations were false when made. *See, e.g., Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998) ("the mere failure to perform a contract is not evidence of fraud"); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 798 (N.D. Tex. 2009) (holding that plaintiffs

- 11 -

could not rely on the fact that the IRS ultimately ruled that defendants' defined benefit plan was illegal to retroactively show that defendants' representations concerning the plan were false when made). Accordingly, Plaintiffs do not provide a specific explanation of why the statements made by Terrell were fraudulent, and therefore do not make sufficiently specific allegations to make out a claim for fraud under Rule 9(b).

Thus, to the extent that Plaintiffs attempt to make out a claim for common law fraud based on Shadle's allegedly fraudulent representations, their claim is **DISMISSED**.[3]

### 2.    Fraudulent inducement

Fraudulent inducement "is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). In order to make out a claim for fraudulent inducement, therefore, a plaintiff must establish the elements of fraud "as they relate to an agreement between the parties." *Id.* at 798-99. Furthermore, while a promise of future performance can constitute an actionable misrepresentation, such a promise must be made "with no intention of performing at the time it was

---

[3] Plaintiffs argue in their brief that the fact that Shadle has filed her Motion nearly 18 months after this litigation commenced indicates that she was well apprised of the nature of the claims against her. Doc. 128, Pls.' Resp. 5. Plaintiffs also reason that if the Complaint was so ill-pleaded, as Shadle alleges, then she would not have answered the Complaint or engaged in discovery, but would have immediately sought dismissal. *Id.* They also suggest that their claims must have adequate evidentiary support, or else Shadle would have moved for summary judgment rather than dismissal on technical pleading grounds. *Id.* Plaintiffs' arguments on this point are misleading, however, and fail to recognize that Defendants have only been represented sporadically throughout the course of this litigation. Moreover, Shadle only filed her Motion once she retained separate counsel from the other Defendants, and that counsel has also recently withdrawn. Doc.157, Mot. to Withdraw. Shadle's failure to file her Motion earlier in the litigation therefore appears more a consequence of lack of financial means than subtle manipulation of the procedural rules. The Court refuses to infer from the late filing of this Motion that Shadle is somehow trying to avoid trial based on technical pleading grounds, especially when she was otherwise permitted by the Federal Rules to submit her Motion when she did.

made" in order to be actionable. *Formosa*, 960 S.W.2d at 48.

Plaintiffs rely on the same statements regarding bonuses to make out their claims for fraudulent inducement as they do to make out their claims for common law fraud. Doc. 108, Am. Compl. ¶¶ 81-86. Consequently, Plaintiffs' claims of fraudulent inducement fail for similar reasons that their claims for common law fraud fail. As noted above, Plaintiffs fail to plead sufficient facts to show that the alleged statements are false or that Shadle knew them to be false. Moreover, Plaintiffs provide no allegations to show that Terrell or any of the other Defendants had no intention of ensuring that Terrell's promises concerning their bonuses would be carried out. Instead, Plaintiffs only allege that Terrell, Alcazar, and Caughron personally assured them, years after the contracts were entered into, that their bonuses would be paid, even though these defendants knew that the bonuses would not be paid. Doc. 108, Am. Compl. ¶¶ 29, 31, 34, 87. Such allegations say nothing about the intent of the parties when the promises were initially made, and they do not provide any basis for a fraudulent inducement claim against Shadle specifically.[4]

Thus, to the extent that Plaintiffs attempt to make out a claim for fraudulent inducement, they fail to plead sufficiently specific facts to make out each element of their claim as to Shadle. Their fraudulent inducement claim against Shadle is therefore **DISMISSED with prejudice**.

------

[4]Although it is not clear from their pleadings, Plaintiffs may also intend to make out a claim for fraudulent inducement based on (1) their allegations that Terrell, Alcazar, and Caughron personally assured them that they would receive their bonuses, and (2) their allegations that Defendants willfully misled Plaintiffs regarding the financial and legal situation of AHK. Doc. 108, Am. Compl. ¶¶ 87-90. These allegations are not specific enough to meet Rule 9(b)'s pleading standard, however, because they do not identify the time, place, or circumstances surrounding these statements, and they do not specify what statements, if any, were made by Shadle. Moreover, Plaintiffs do not allege that these statements induced them to enter a contract, which is a necessary showing for making out a fraudulent inducement claim. *Haase*, 62 S.W.3d at 798 ("Without a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim."); *Kevin M. Ehringer Enterprises, Inc. v. McData Services Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) ("Fraudulent inducement also requires proof of an underlying contract which was induced.").

3.      Fraud by omission

Fraud by omission (or fraud based on nondisclosure) occurs where there is a duty to disclose information as a matter of law. *Smith*, 225 F. App'x at 217-18. "To sustain a fraud by omission claim, the plaintiff must prove all the elements of 'fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by [omission] of a material fact in light of a duty to disclose.'" *Id.* (citations omitted). Accordingly, in order to make out a claim for fraud by omission, a plaintiff must show that a party with a duty to disclose

> (1) conceals or fails to disclose a material fact within the knowledge of that party; (2) knows the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) intends to induce the other party to take some action by concealing or failing to disclose the fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

*CDI Corp. v. GT Solar Inc.*, No. H-11-3487, 2013 WL 873785, at *2 (S.D. Tex. Mar. 7, 2013) (citing *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001)). Whether a party has a duty to disclose information will depend on the circumstances, but some courts have recognized that such a duty may arise

> (1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression.

*Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.–Houston (14th Dist.) 1997, writ denied).

"Although the nature of an omission renders it more difficult to plead with particularity than an affirmative misrepresentation, Plaintiffs must still comply with Rule 9(b)." *Berry*, 600 F. Supp. 2d at 821. Because Rule 9(b) still applies to a plaintiff's fraud by omission claim, a plaintiff must allege

facts showing that a defendant had such a duty to disclose under Rule 9(b). *In re Enron Corp. Sec.*, 540 F. Supp. 2d 759, 771 (S.D. Tex. 2007). "In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006).

Plaintiffs insist that they have sufficiently pled fraud by omission against Shadle. They argue that Shadle had a duty to disclose information regarding AHK's financial and legal troubles because she was a high-level executive in the company and because she made representations and disclosures to Plaintiffs concerning AHK. Doc. 128, Pls.' Resp. 8. While Plaintiffs admit that their allegations may lack specificity regarding the time, place, and content of Shadle's fraudulent acts, they insist that, because she committed fraud by omission, it is impossible for Plaintiffs to identify every instance in which Shadle made a willfully inaccurate statement. *Id.* at 7.

Shadle maintains that Plaintiffs have failed to allege that she had a duty to disclose any information to them. Doc. 126, Def.'s Br. 14. She asserts specifically that Plaintiffs allege no circumstances that would impose a duty on Shadle, and she argues that the fact that she was a Vice-President of Operations imposes no duty to disclose information to Plaintiffs, who were also Senior Vice Presidents of AHK. *Id.*

Plaintiffs fail to plead sufficient facts from which the Court could infer that Shadle owed them a duty to disclose. Considering the different situations set forth in *Hoggett*, the Court first notes that Shadle did not owe Plaintiffs a fiduciary duty. Plaintiffs argue that because Shadle, as a high-level executive, owed AHK a fiduciary duty, she also owed them a duty as employees of AHK to inform them of AHK's financial situation or the Texas Inspector General audit. Plaintiffs point to

no authority to support this point, however, and such a fiduciary relationship between co-directors or co-employees of a company is not among the traditional formal relationships that Texas courts have recognized. *Entm't Merch. Tech., LLC v. Houchin*, 720 F. Supp. 2d 792, 796 (N.D. Tex. 2010) ("Formal relationships are those for which fiduciary duties are owed as a matter of law, including the relationship between attorney and client, partners, in trustee relationships, or between directors of a corporation and the corporation and its stockholders."). Moreover, the Court is hesitant to find an informal fiduciary relationship under these circumstances. *Hoggett*, 971 S.W.2d at 488. Indeed, *Hoggett* weighs against finding a fiduciary relationship here. In *Hoggett*, the Court held that a defendant had no duty to inform the plaintiff of a proposed merger prior to a board meeting because no fiduciary relationship, formal or informal, existed between the parties, even though both were determined to be directors of the same company. *Id.* at 488-89; *see also Van Bevel v. Oasis Design, Inc.*, No. 03-97-00434-CV, 1998 WL 546342, at *6 (Tex. App.–Austin 1998, no pet.) (holding that parties who were co-shareholders, co-officers, and co-directors did not, as a matter of law, owe one another a fiduciary duty). Similarly, here, Shadle did not owe Plaintiffs, who were also Vice Presidents of the company, a duty to disclose simply by virtue of her position as a Vice President in the company.

As to the other three situations in which the court in *Hoggett* recognized that a duty may arise, Plaintiffs have similarly failed to plead sufficient facts to establish that Shadle owed them a duty of disclosure. Plaintiffs allege that Defendants failed to apprise them of AHK's deteriorating financial condition, despite Plaintiffs' regular requests for financial and company information. Doc. 108, Am. Compl. ¶¶ 36-37, 89, 92. They also allege that Defendants failed to notify them of the Texas Inspector General audit of AHK. *Id.* ¶¶ 38-41, 90. Plaintiffs maintain that these bare

assertions are sufficient to show that Shadle (1) disclosed information, and therefore had a duty to

disclose "the whole truth"; (2) made representations regarding AHK's financial situation, which then

obligated her to update Plaintiffs as to AHK's financial condition; and (3) willfully omitted critical

information regarding AHK, thus falsely assuring them that the company was doing well. Doc. 128,

Pls.' Resp. 8-9. Contrary to Plaintiffs' assertions, however, none of the allegations in their Complaint

specify what information Shadle personally disclosed or what representations she personally made

that would obligate her to make further disclosures. *See Kelly Law Firm, P.C.*, 679 F. Supp. 2d at 773-

74 ("Nor does the petition specify which disclosures made by Calliope were incomplete such that

Calliope had a duty to provide further disclosures."). The only representations that could

theoretically support a fraud by omission claim are the representations concerning bonuses that

Shadle allegedly "authorized" Terrell to make and that she "approved" in the employment contracts,

but even these would not be sufficient to impose a duty on Shadle because Plaintiffs do not plead

any facts to show that Shadle was aware of new information indicating that AHK would not repay

their bonuses. *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Companies, Inc.*, 217 S.W.3d 653, 671

(Tex. App.–Houston (14th. Dist.) 2006, pet. denied) ("when one makes a representation, he has

a duty to disclose new information *when he is aware* the new information makes the earlier

representation misleading or untrue") (italics added); *Dewayne Rogers Logging, Inc. v. Propac Indus.,

Ltd.*, 299 S.W.3d 374, 391 (Tex. App.–Tyler 2009, pet. denied) ("[A] party cannot be guilty of

fraudulently or intentionally concealing facts of which he is not aware."). Again, Shadle held a very

similar position in AHK to Plaintiffs (Vice-President), and the Court cannot reasonably infer,

without some sort of factual basis in the Complaint, that Shadle had any more awareness of AHK's

financial situation than Plaintiffs. Accordingly, the Court concludes that Plaintiffs fail to plead

sufficiently specific facts to establish that Shadle owed them a duty to disclose. *Boutain v. Radiator Specialty Co.*, No. 11-1907, 2011 WL 6130754, at *3 (E.D. La. Dec. 8, 2011) ("Because plaintiffs do not articulate the basis for Exxon's duty to disclose, their claim falls short of the requirements of Rule 9(b).").

Even assuming that Shadle did have a duty to disclose under the circumstances here, Plaintiffs have failed to provide any details as to the communications between the parties such that the Court could determine "the place in which the omissions should have appeared" or "the way in which the omitted facts made the representations misleading." *Carroll*, 470 F.3d at 1174. Accordingly, Plaintiffs' allegations do not meet the heightened pleading standard of Rule 9(b) and are insufficient to make out a claim for fraud by omission against Shadle. Accordingly, the Plaintiffs' claims of fraud by omission against Shadle are hereby **DISMISSED with prejudice**.

C. *Negligent Misrepresentation*

When claims for fraud and negligent misrepresentation are based on the same set of alleged facts, Rule 9(b)'s heightened pleading standard generally applies to both. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010); *see Paul v. Aviva Life & Annuity Co.*, No. 3:09-CV-1490-B, 2010 WL 5105925, at *8 (N.D. Tex. Dec. 14, 2010) (applying 9(b) to fraud and negligent misrepresentation claims that arose out of same set of facts but were contained in separate counts in complaint). The Court acknowledges that some courts, including the Fifth Circuit, have expressed doubt as to whether this rule applies in all circumstances, *see Am. Realty Trust Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 668-69 (5th Cir. 2004); *Nazareth Int'l, Inc. v. J.C. Penney Corp., Inc.*, No. 3:04-CV-1265-M, 2005 WL 1704793, at *3-*4 (N.D. Tex. July 19, 2005). The Court does not need to consider whether Rule 9(b) is properly applied to Plaintiffs'

negligent misrepresentation claims here, however, because Plaintiffs do not contest that Rule 9(b) should apply. Doc. 128, Pls.' Resp. 10. Moreover, because they are based on almost exactly the same factual averments, Plaintiffs' fraud and negligent misrepresentations claims are so intertwined that it would be impossible to remove the inadequate fraud averments while preserving a viable negligent misrepresentation claim. *Nazareth Intern., Inc.*, 2005 WL 1704793, at *4. Plaintiffs' negligent misrepresentation claims fail to satisfy Rule 9(b) for the same reasons as its fraud claims above and are therefore **DISMISSED with prejudice**.[5]

## IV.

## CONCLUSION

For the reasons stated above, Defendant Katherine Shadle's Motion for Judgment on the Pleadings is hereby **GRANTED** as to all claims. Plaintiffs claims against Shadle are hereby **DISMISSED with prejudice**.[6]

---

[5] Because the Court determines that Plaintiffs fail to plead sufficient facts to make out any of their claims, it does not reach the parties' arguments concerning the economic loss rule.

[6] The Court acknowledges that courts will often afford a plaintiff the opportunity to overcome pleading deficiencies upon granting a motion to dismiss; however, the decision to permit amendments is left to the sound discretion of the district court, *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 387 (5th Cir. 2003), and granting such relief under the circumstances of this case appears futile for a number of reasons. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). First, the Court permitted an extension of the deadline to amend pleadings once in this case long after the originally established deadline. Doc. 108, Order. In spite of the Court's willingness to allow amendments to the pleadings, however, Plaintiffs did not elect to amend the allegations against Shadle, even though they were clearly insufficient under Fifth Circuit precedent and Texas law. Second, despite both parties' demonstrated propensity for requesting extensions in this case, Plaintiffs do not request in their Response that the Court allow them to amend their pleadings to fix their deficiencies in the event that Shadle's Motion is granted. Third, this case differs from those like *Hitt* because the Court only dismisses the claims against Shadle and leaves those claims against the remaining defendants intact. Thus, the Court's decision does not stand to deprive Shadle of the opportunity to recover from those Defendants against whom she has properly pled her claims. Finally, this case is set for trial in a few short months, and permitting Plaintiffs to replead would likely only lead to another extension of the remaining deadlines in this case and thus cause undue delay of the ultimate resolution of this matter.

SO ORDERED.

SIGNED: June 3rd, 2014

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE