UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIMBERLY HOFFMAN and | § | |
| PATTI PATE-SCHNURE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-3806-B |
| | § | |
| AMERICAHOMEKEY, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The issue before the Court under Rule 56(f) of the Federal Rules of Civil Procedure is the scope of Plaintiffs' potential damage recovery from Weststar on its fraudulent transfer claim. For the reasons that follow, the Court concludes that the maximum amount that Plaintiffs can recover from Weststar on their fraudulent transfer claim is $536,200—i.e., the unfulfilled amount of Plaintiffs' consent judgment against AHKI—plus post-judgment interest on that judgment.

## I.

## BACKGROUND

The undisputed facts relevant to the issue at hand are as follows. On September 19, 2012, Plaintiffs Kimberly Hoffman and Patti Pate-Schnure filed suit against their former employer AmericaHomeKey, Inc. ("AHKI"), a now defunct provider of mortgage loan origination services, and several of its officers (collectively, the "Individual Defendants," and together with AHKI, the "AHKI Defendants"), seeking to recover bonuses they claim they were unlawfully deprived under their respective employment agreements. Doc. 1. Plaintiffs asserted claims against the AHKI Defendants

for breach of contract, fraud, negligent misrepresentation, conversion and unjust enrichment. *Id.* Moreover, because AHKI sold the majority of its assets prior to going out of business, Plaintiffs pleaded a claim against AHKI and Weststar Mortgage Corporation ("Weststar"), the purchaser of AHKI's assets, under the Uniform Fraudulent Transfer Act ("UFTA"). *Id.*

On December 9, 2014, the Court granted summary judgment for Plaintiffs on their breach of contract claim,[1] but denied Plaintiffs' request for summary judgment on the remainder of their claims. Doc. 258, Memorandum Opinion and Order ("Mem. Op. & Order"). The Court also denied Weststar's motion for summary judgment on its bona fide purchaser defense to UFTA liability. *Id.*

Subsequently, Plaintiffs entered into a settlement agreement with the AHKI Defendants, whereby Plaintiffs agreed to dismiss their claims against the Individual Defendants in return for a consent judgment against AHKI (the "Consent Judgment").[2] Docs. 347–348. The Consent Judgment, which "fully and finally" resolved Plaintiffs' claims against AHKI, entitles Plaintiffs to judgment against AHKI in the amount of $580,000, plus post-judgment interest.[3] Doc. 349. Pursuant to the terms of the parties' settlement agreement, AHKI has paid Plaintiffs $43,800 in partial

---

[1] To be more precise, the Court concluded that Plaintiffs were entitled to summary judgment on the issue of liability, but fact issues prevented the Court from deciding the issue of damages. Mem. Op. & Order 12–13.

[2] Plaintiffs voluntarily dismissed their claims against Individual Defendant Steven Chiou earlier in the litigation. Docs. 72–73. Plaintiffs' claims against Individual Defendant Katherine Shadle were dismissed after the Court granted her motion for judgment on the pleadings. Doc. 227.

[3] Following entry of the Consent Judgment by the Court on July 16, 2015, Weststar moved to dismiss Plaintiffs' case for lack of subject matter jurisdiction. Doc. 350, Plea to the Jurisdiction ("Plea"). Weststar argued that due to the Consent Judgment, Plaintiffs were no longer "creditors" under the UFTA and therefore lacked standing to pursue their fraudulent transfer claim against Weststar. *Id.* at 2–3. Finding this argument without merit, the Court denied the motion, paving the way for the case to go to trial on July 20, 2015. Doc. 351.

satisfaction of the Consent Judgment. Doc. 360, Pls.' Br. 6.

The Court held a pretrial conference to resolve various motions in limine and other pretrial issues on July 17, 2015. During the pretrial conference (and at a teleconference held later the same day), however, it became apparent to the Court that there was a fundamental disagreement between the parties as to the effect, if any, that the Consent Judgment had on Plaintiffs' ability to recover from Weststar under the UFTA, which prevented the case from proceeding to trial as scheduled. Docs. 353–54. Accordingly, the Court vacated the trial date and directed the parties to submit briefs on the issue. Docs. 352, 358. Thereafter, the Court notified the parties of its intent under Rule 56(f) to decide the scope of Plaintiffs' potential damage recovery against Weststar and provided the parties with an additional ten (10) days to submit materials relevant to the issue. Doc. 361. Having received both parties' materials, the Court is now prepared to decide the issue before it.

## II.

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although Rule 56 contemplates a motion being filed, Rule 56(f) specifically authorizes courts to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute" and giving the parties notice and a reasonable time to respond. Fed. R.

Civ. P. 56(f); *see also Love v. Nat'l Med. Enterprises*, 230 F.3d 765, 770–71 (5th Cir. 2000) ("[I]t is well-settled that a district court may grant summary judgment *sua sponte,* 'so long as the losing party has ten days notice to come forward with all of its evidence' in opposition to summary judgment.") (quoting *Washington v. Resolution Trust Corp.*, 68 F.3d 935, 939 (5th Cir. 1995)).

## III.

## ANALYSIS

The question before the Court is what effect, if any, the Consent Judgment had on Plaintiffs' ability to recover from Weststar on its fraudulent transfer claim or the scope of Plaintiffs' potential damage recovery from Weststar. Weststar contends that the Consent Judgment is entitled to preclusive effect under the doctrine of collateral estoppel and therefore completely resolves Plaintiffs' fraudulent transfer claim against Weststar. Doc. 360, Def.'s Br. 2–4; Doc. 365, Def.'s Supp. Br. 2–4. In the alternative, they maintain that Plaintiffs are judicially estopped from recovering more than the amount of the consent judgment from Weststar. Def.'s Br. 4–6; Def.'s Supp. Br. 4–6. Plaintiffs, by contrast, argue that the Consent Judgment is not entitled to preclusive effect and in no way limits their right to recover from Weststar on their fraudulent transfer claim.[4] Doc. 360, Pls.' Br. 7–16; Doc. 365, Pls.' Supp. Br. 5–19. Neither is correct.

Under Section 24.005 of the UFTA, a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer:

> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or

---

[4] Although not entirely clear from their briefs, Plaintiffs have previously indicated to the Court their belief that they may recover damages from Weststar in excess of the $580,000 to which the Consent Judgment entitles them, including damages for lost profits.

      obligation, and the debtor: (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Tex. Bus. & Comm. Code § 24.005(a). A creditor who has been the victim of a fraudulent transfer may sue to void the transfer. *Id.* § 24.008(a)(1). To the extent the transfer is found to be voidable under 24.008(a)(1), the creditor may recover from the transferee <u>the lesser</u> of the value of the assets transferred or the amount necessary to satisfy the creditors claim. *Id.* § 24.009(b).

      As the Court has taken pains to explain, Plaintiffs are creditors of AHKI (the debtor/transferor) under the UFTA by virtue of the unfulfilled Consent Judgment that they obtained against it. Doc. 351, Order Denying Mot. to Dismiss. As such, they may seek to recover from Weststar (the transferee) the lesser of the value of the assets transferred or the amount necessary to satisfy their claim. Tex. Bus. & Comm. Code § 24.009(b). The value of the assets transferred has yet to be established. The amount necessary to satisfy Plaintiffs' claim against AHKI is equivalent to the unfulfilled amount of the Consent Judgment.[5] Thus, the maximum amount that Plaintiffs can recover from Weststar on their fraudulent transfer claim is $536,200 ($580,000 less the $43,800 Plaintiffs received from AHKI), plus post-judgment interest on the Consent Judgment.[6]

      To the extent that Plaintiffs argue that the Consent Judgment does not limit the scope of

---

[5] The UFTA defines a "claim" as "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 24.002(3). Because the Consent Judgment fully and finally resolved all of Plaintiffs' damage claims against AHKI, Plaintiffs only right to payment from AHKI derives from the unfulfilled Consent Judgment.

[6] As should be apparent from the Court's discussion, the Court reaches this holding based on a simple application of the UFTA to the facts of this case and not on the doctrines of collateral or judicial estoppel.

their potential recovery against Weststar, Plaintiffs confuse their damages for AHKI's alleged breach of contract, fraud, negligent misrepresentation, conversion and unjust enrichment with the value of their "claim" against AHKI under the UFTA. Plaintiffs correctly observed that the Consent Judgment is not a final adjudication on the merits and therefore is not entitled to preclusive effect when it comes to the issue of AHKI's liability for breach of contract, fraud, etc. or Plaintiffs' damages stemming therefrom.[7] *See, e.g.*, *Kaspar Wire Works, Inc. v. Leco Engineering & Mach., Inc.*, 575 F.2d 530, 539 (5th Cir. 1978); *Indem. Ins. Co. v. City of Garland*, 258 S.W.3d 262, 271 (Tex. App.—Dallas 2008, no pet.) (refusing to give issue preclusive effect to consent judgment); *Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 854 (Tex. App.—San Antonio 1997, pet. denied) (judgment based upon compromised settlement is not an adjudication on the merits); *Aranda v. Ins. Co. of N. Am.*, 833 S.W.2d 209, 220 n.1 (Tex. App.—Houston [14th Dist.] 1992, no writ) ("A final judgment agreed to by the parties serves as an estoppel only as to those facts actually and necessarily decided."); *see also* 18A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4443 (2d ed. 1987) (observing that "consent judgments ordinarily support claim preclusion but not issue preclusion"). But these issues are no longer before the Court, because Plaintiffs' breach of contract and tort claims were fully and finally resolved by the Consent Judgment. Doc. 349. Rather, the issue before the Court is the value of Plaintiffs' "claim" under the UFTA. As explained above, Plaintiffs' "claim" against AHKI under the UFTA derives solely from the Consent Judgment and its

---

[7] A consent judgment may still be given conclusive effect under basic principles of contract law if the parties indicate their intent to be bound by the judgment in future litigation. *See Kaspar Wire Works, Inc. v. Leco Engineering & Mach., Inc.*, 575 F.2d 530, 539 (5th Cir. 1978); Restatement (Second) of Judgments § 27 (1982). However, the Court need not decide whether the Consent Judgment manifests such an intent because Weststar was not a party to the Consent Judgment and therefore has no standing to enforce its terms against Plaintiffs.

value is equivalent to its unfulfilled amount.

## IV.

## CONCLUSION

For the aforementioned reasons, the Court concludes that the maximum amount that Plaintiffs can recover from Weststar on their fraudulent transfer claim is $536,200, plus post-judgment interest on the Consent Judgment. The issues left for trial are: (1) whether the transfer of assets from AHKI to Weststar was fraudulent; (2) whether Weststar took these assets in good faith and for reasonably equivalent value; and (3) the value of the assets transferred.

SO ORDERED.

SIGNED: August 12, 2015.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE